The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner W. Bain Jones, Jr. and the briefs on appeal. Both parties waived oral arguments before the Full Commission. The appealing party has not shown good ground to receive further evidence or to amend the Deputy Commissioners holding. Accordingly, the Full Commission affirms the Deputy Commissioners decision and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 28 January 1999 and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Hartford Insurance Company is the carrier on risk.
4. This claim arises from a compensable back injury which occurred on 16 August 1997.
5. Plaintiff last worked for the defendant-employer on 14 January 1998. Plaintiff was paid temporary total disability compensation based upon an average weekly wage of $289.00 yielding a compensation rate of $192.68 from 2 September 1997 through 7 September 1997 and 1 October 1997 through 3 December 1997.
6. Plaintiffs medical records were stipulated into evidence as Stipulated Exhibit 1.
7. A Form 22 was stipulated into evidence as Stipulated Exhibit 2.
 * * * * * * * * * * * EVIDENTIARY RULINGS
The objections raised in the depositions of Alfred Rhyne, M.D., Allan S. Ryder-Cook, M.D., and Keith D. Shealy, M.D. are OVERRULED.
 * * * * * * * * * * *
Based upon the entire evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff sustained a compensable back injury on 16 August 1997 while working for defendant-employer when a stool went out from beneath her causing plaintiff to fall onto the floor. Plaintiff immediately reported the accident to her manager and continued working. Plaintiffs pain continued to worsen and she began to have numbness in her left leg.
2. Plaintiffs manager directed her to a minor emergency clinic for an evaluation. Plaintiff presented herself on 2 September 1997 at ProMed where she was diagnosed with a lumbar strain and contusion of the sacrum.
3. Plaintiff returned to ProMed on 5 September 1997 and 12 September 1997 at which time she was referred to Thomas Buter, M.D., of Charlotte Orthopedic Specialists. Plaintiff was examined by Dr. Buter on 17 September 1997, at which time she was experiencing persistent pain in her low back and leg.
4. Dr. Buter referred plaintiff to Alfred L. Rhyne, III, M.D, who removed her from work until 1 December 1997. Plaintiff was able to return to work on 4 December 1997. Dr. Rhyne treated plaintiff conservatively during this period prescribing physical therapy, a work conditioning program and medications.
5. Dr. Rhyne released plaintiff to return to work on 4 December 1997 at four hours per day with this amount to be increased over a period of time in order to ease her way back to work.
6. Plaintiff presented herself to Dr. Rhyne on 12 January 1998 with complaints of left leg pain and her left leg giving away. Dr. Rhyne authorized her to continue working five to six hours a day. Plaintiff has not seen Dr. Rhyne since 12 January 1998.
7. Plaintiff was seen by David N. DuPuy, M.D. for an independent medical examination. Dr. DuPuy, who is a partner of Dr. Rhyne, examined plaintiff on 15 January 1998 and restricted her to a four-hour work day for the next four weeks. Dr. DuPuy planned to increase plaintiffs work to six hours a day for a month or so and then hopefully to an eight-hour workday.
8. Plaintiff had been previously treated by Keith Shealy, M.D., for fibromyalgia. Plaintiff began seeing Dr. Shealy on 26 September 1997 concerning her problems with her low back and left leg. Dr. Shealy was of the opinion that plaintiffs complaints were related to the fall she suffered on 16 August 1997.
9. Dr. Shealy took plaintiff out of work on 31 January 1998 and referred her to Allan S. Ryder-Cook, M.D.
10. Dr. Ryder-Cook saw plaintiff on 12 February 1998 and diagnosed her with an L5 radiculopathy related to some irritation at the L5 root nerve by a bulging disc at the L4-5 level. Dr. Ryder-Cook treated plaintiff with physical therapy, traction, a tens unit, and anti-inflammatory and pain medications.
11. Dr. Ryder-Cook referred plaintiff to R. Jeffrey Seymore, M.D., for epidural steroid injections and monitoring of her chronic pain. Plaintiff first saw Dr. Seymore on 28 September 1998. Dr. Seymore administered an epidural steroid injection on 14 October 1998 and 4 November 1998. Dr. Seymore opined that plaintiffs pain was related to a slow leak from one of plaintiffs discs.
12. Plaintiff earned $794.52 in June 1997, $1,694.20 in July 1997 and $2,233.25 during the full month of August 1997. Plaintiff was injured on 16 August 1997. Plaintiffs pre-injury earnings were $3,641.36 yielding an average weekly wage of $359.01.
13. Plaintiff earned $987.00 in tips for the year of 1997. The average weekly wage of such tips is $62.23.
14. Plaintiffs average weekly wage based upon her earnings and tips is $421.24 yielding a compensation rate of $280.83.
15. Plaintiff received an underpayment of temporary total disability benefits for the periods of 2 September 1997 and 29 September 1997 and 1 October 1997 through 3 December 1997 in the amount of $88.15.
14. Plaintiff followed the instructions of her physicians relating to her limitations during the periods of December 1997, January 1997 and until the time of her termination on 6 February 1998.
15. Plaintiff earned one-half of the wages she would have otherwise earned during the period of 5 December 1997 through 6 February 1998. Plaintiff is entitled to temporary partial disability benefits for this period.
16. Defendant-employer was unable to supply work within plaintiffs restrictions at the time of plaintiffs termination on 6 February 1998.
17. Plaintiffs back problems are the result of her compensable injury sustained while working for defendant-employer on 16 August 1997.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 16 August 1997, plaintiff suffered a compensable injury by accident arising out of and in the course of her employment with defendant-employer. G.S. 97-2(6).
2. As a result of her compensable injury of 16 August 1997, plaintiff was paid temporary total disability compensation from 2 September 1997 through 29 September 1997 and 1 October 1997 through 4 December 1997, during which time her average weekly wage had been miscalculated. G.S. 97-2(5). Plaintiffs average weekly wage is $421.21 yielding a compensation rate of $280.83.Id. Plaintiff is entitled to additional compensation in the amount of $88.15. per week for the difference between the temporary total disability compensation previously paid and the correct compensation rate of $280.83. Id.; G.S. 97-29.
3. As the result of her 16 August 1997 injury by accident, plaintiff is entitled to temporary partial disability compensation based upon earning half of her average weekly wages for the period of 5 December 1997 through 5 February 1998. G.S.97-30.
4. As the result of her 16 August 1997 injury by accident plaintiff is entitled to ongoing total disability compensation at the rate of $280.83 per week for the period of
6 February 1998 until she returns to work or until further ordered by this Commission. G.S. 97-29.
5. As the result of her 16 August 1997 injury by accident, plaintiff is entitled to medical treatment that would effectuate a cure, give relief or lessen plaintiffs pain. G.S. 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff the difference between her temporary total disability compensation which was paid for the periods of 2 September 1997 through 29 September 1997 and from 1 October 1997 through 4 December 1997 and what she should have received, an amount equal to of $88.15 per week. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorneys fee approved herein.
2. Defendants shall pay to plaintiff temporary partial disability compensation based on her earning half of her normal wages for the period of 5 December 1997 through 5 February 1998. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorneys fee approved herein.
3. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $280.83 per week for the period of 6 February 1998 through the present and continuing until plaintiff returns to work or until further order from this Commission. From the amounts having accrued, this shall be paid to plaintiff in a lump sum. This compensation is subject to the attorneys fee approved herein.
4. Defendants shall pay all medical expenses resulting from plaintiffs compensable injury on 16 August 1997, including the costs associated with the treatment provided by Alfred L. Rhyne, III, M.D., David N. DuPuy, M.D., Keith Shealy, M.D., Allan S. Ryder-Cook, M.D. and R. Jeffrey Seymour, M.D.
5. A reasonable attorneys fee of twenty-five (25%) of the compensation awarded to due plaintiff above is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter
6. Defendants shall pay the costs.
 S/ ______________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ____________________ RENÉE C. RIGGSBEE COMMISSIONER
S/ ____________________ LAURA K. MAVRETIC COMMISSIONER